IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BENJAMIN WATERS,　　　　　　　＊

　　　Plaintiff,　　　　　　　　＊

v.　　　　　　　　　　　　　　＊　　Civil Action No. GLR-17-2960

DIONNE RANDOLPH, et al.,　　　＊

　　　Defendants.　　　　　　　＊
*****

## MEMORANDUM OPINION

Plaintiff Benjamin Waters brings suit under 42 U.S.C. § 1983 (2012) against Baltimore City Booking and Intake Center ("BCBIC"), Warden Dionne Randolph, and BCBIC Officers T. Brown, J. Francis, M. Fortcham, and P. Jackson (collectively, the "BCBIC Defendants"), alleging violations of his civil rights while he was detained at BCBIC. (Am. Compl. at 3, ECF No. 3).[1] Waters also names Baltimore City Mayor, Catherine Pugh, and Baltimore City Assistant State's Attorneys, Shari Greene[2] and Tracy Varda, who participated in his 2016 criminal prosecution on charges of first- and second-degree assault and wearing or carrying a deadly weapon with intent to injure.[3] (Id.).

---

[1] On December 21, 2017, Waters filed a Motion to Amend (ECF No. 3), which the Court construes as an amended complaint. See Monge v. Portofino Ristorante, 751 F.Supp.2d 789, 792 n.1 (D.Md. 2010) (explaining that the Court should not exalt form over substance). Accordingly, the Court will deny Waters' Motion as moot.

[2] The Clerk shall amend the docket to reflect the correct spelling of the names of Assistant State's Attorneys Shari Greene and Tracy Varda.

[3] "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015); see Fed.R.Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined

Waters seeks a written apology, money damages, expungement of his arrest and court records, and "appropriately placed cameras" in BCBIC to monitor the corrections officers. (Id. at 5).

Waters, who is no longer detained, filed his complaint under 28 U.S.C. § 1915(a)(1) (2012), which permits an indigent litigant to commence an action in federal district court without prepaying the filing fee.[4] Under 28 U.S.C. § 1915(e)(2), the Court is required to review civil complaints filed in forma pauperis to determine if the plaintiff alleges cognizable claims. Upon review, if the Court concludes that a claim is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief," the Court must dismiss the complaint. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

The Court is mindful, however, of its obligation to liberally construe self-represented pleadings, such as the instant Complaint. See Erickson, 551 U.S. at 94. In evaluating such a complaint, the Court assumes the factual allegations are true. Id. at 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)). Pro se

---

from sources whose accuracy cannot reasonably be questioned"). In particular, pursuant to Federal Rule of Evidence 201, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute," in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Accordingly, the Court will take judicial notice of facts from Maryland Judiciary Case Search regarding the 2016 criminal case against Waters in the Circuit Court for Baltimore City, Maryland. See State of Maryland v. Benjamin H. Waters, III, Maryland Judiciary Case Search, http://casesearch.courts.state.md.us/casesearch/inquirySearch.jis (Under "Search By Case Number," select "Baltimore City Circuit Court" and enter case number "116214019"; then select "Get Case.").

[4] Waters filed two Motions to Proceed In Forma Pauperis (ECF Nos. 2, 4), which the Court will grant.

complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). Nonetheless, "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" Weller v. Dep't of Soc. Servs. for Balt., 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)).

## I. BACKGROUND

A brief overview of Waters' previous litigation history is necessary to review of the instant action. Waters has on two prior occasions filed lawsuits in connection with his criminal detention in Maryland. Waters v. Warden, et al., No. BPG-16-3238 (D.Md.), is an ongoing § 1983 action against the BCBIC Defendants and two additional BCBIC employees, D. Williams and N. Mars, who are alleged to have denied Waters meals on multiple occasions, physically assaulted him, and conducted inappropriate body searches. (Second Am. Compl. at 2, ECF No. 19, BPG-16-3238).[5] The Court has appointed counsel to represent Waters in that case. (ECF No. 55, BPG-16-3238).

In Waters v. City of Baltimore, et al., No. GLR-17-1113 (D.Md.), the Court dismissed without prejudice Waters' claims of malicious prosecution, assault by officers at the time of his arrest, and the denial of affordable bail to permit the filing of a separate action limited to those claims. (ECF No. 3, GLR-17-1113). The Court later dismissed

---

[5] Citations to the Second Amended Complaint in No. BPG-16-3238 refer to the CM/ECF pagination.

3

without prejudice Waters' claim that he was wrongfully held at Clifton T. Perkins Hospital Center ("CTPHC")[6] and forcibly medicated pending adjudication of his criminal charges because Waters failed to fully and properly amend the Complaint to provide additional information as to these claims. (ECF No. 4, GLR-17-1113).

At the time Waters filed suit against the BCBIC Defendants, Williams, and Mars, on September 23, 2016, Waters was a pretrial detainee awaiting trial in the Circuit Court for Baltimore City on charges of first- and second-degree assault, and wearing or carrying a deadly weapon with intent to injure, stemming from a July 7, 2016 incident involving a police officer. (Mot. to Dismiss for Summ. J. ["Defs.' Mot."] Ex. A, ECF No. 12-2, BPG-16-3238). Waters was initially confined on "5 North" at BCBIC. (Mem. Supp. Defs. Mot. at 2 n.1, ECF 12-1, BPG-16-3238). Waters alleges that while on "5 North," correctional officers ("COs") J. Francis, T. Brown, D. Williams, and M. Fortcham deprived him of meals on seven separate occasions. (Second Am. Compl. at 2, ECF No. 19, BPG-16-3238). Waters also claims that CO P. Jackson struck him in the upper body on August 3, 2016, and that Jackson pulled him from his bunk and onto the floor of his cell on August 8, 2016. (Id.). Waters also alleges that on September 2 and 20, 2016, a female officer, CO N. Mars, inappropriately searched him on the stairway near BCBIC's gym. (Id.). On February 10, 2017, the State's Attorney placed Waters' criminal case on the stet docket and Waters was subsequently released from detention. (Defs.' Mot. Ex. A).

---

[6] CTPHC is a psychiatric hospital administered by Maryland's Department of Health.

4

## II. DISCUSSION

Waters' claims against the BCBIC Defendants in the instant case already are before the Court in Civil Action No. BPG-16-3238, which is proceeding with counsel representing Waters. The Court will, therefore, dismiss the claims against the BCBIC Defendants without prejudice.

As to Waters' allegations against Mayor Pugh, Waters fails to state a claim. Waters names Mayor Pugh as a Defendant because she "runs the city [and] is responsible for the civil servants"—a claim of supervisory liability. (Compl. at 3). To the extent that Waters' claim is based on a legal theory known as respondeat superior, it is not a cognizable theory of liability under 42 U.S.C. § 1983.[7] See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).

Supervisory liability under § 1983 may, however, be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the

---

[7] In any event, the BCBIC is a State—not a City—entity and is part of the Maryland Department of Public Safety and Correctional Services. See Baltimore Central Booking & Intake Center, Dep't of Pub. Safety & Corr. Servs., http://www.dpscs.state.md.us/locations/bcbic.shtml. Thus, Mayor Pugh has no supervisory authority over BCBIC.

5

knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted). Here, Waters' statement that Mayor Pugh is liable because she "runs the city [and] is responsible for the civil servants" is insufficient to satisfy the elements of a § 1983 supervisory liability claim. Accordingly, the Court will dismiss the claim against Mayor Pugh.

Finally, Waters' fails to state malicious prosecution and false imprisonment claims against Assistant State's Attorneys Greene and Varda. To state a malicious prosecution claim, the plaintiff must allege: (1) "a criminal proceeding instituted or continued by the defendant against the plaintiff"; (2) "termination of the proceeding in favor of the accused"; (3) "absence of probable cause for the proceeding"; and (4) "'malice', or a primary purpose in instituting the proceeding other than that of bringing an offender to justice." Montgomery Ward v. Wilson, 664 A.2d 916, 922 (Md. 1995) (quoting Exxon Corp. v. Kelly, 381 A.2d 1146, 1149 (Md. 1978)). Here, Waters' criminal proceeding has not terminated in his favor because the charges against him were placed on the stet docket. See Hines v. French, 852 A.2d 1047, 1057 (Md.Ct.App. 2004). Thus, Waters' fails to state a malicious prosecution claim against Greene and Varda.

As to the false imprisonment claim, this tort requires a showing that the deprivation of liberty was without consent and without legal justification. See Manikhi v. Mass Transit Admin., 758 A.2d 95 (Md. 2000). As State's Attorneys, Greene and Varda

6

are not the individuals who arrested Waters, nor were they responsible for his detention pending trial. Thus, Waters' fails to state a false imprisonment claim against Greene and Varda. Accordingly, the Court will dismiss Waters' claims against Green and Varda.

### III. CONCLUSION

For the foregoing reasons, the Court will dismiss Waters' Amended Complaint. A separate order follows.

Entered this 9th day of January, 2018

_____/s/_____
George L. Russell, III
United States District Judge